UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEBRA FELDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TWENTIETH CENTURY FOX FILM | ) | CIVIL ACTION NO. |
| CORPORATION, NEWS CORPORATION, | ) | 09-10714-DPW |
| NBC UNIVERSAL, INC., KEVIN FALLS, | ) | |
| SHONDA RIMES, TOUCHSTONE TELEVISION | ) | |
| PRODUCTIONS, AMERICAN BROADCASTING | ) | |
| COMPANIES, INC., MARK GORDON, GREG | ) | |
| BERLANTI, MARC GUGGENHEIM, WALT | ) | |
| DISNEY COMPANY, UNITED TALENT AGENCY, | ) | |
| MARK KORMAN, and ENDEAVOR, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER
July 13, 2010

Plaintiff Debra Feldman brings this action against Twentieth Century Fox Film Corporation, News Corporation, NBC Universal, Inc., Kevin Falls, Shonda Rimes, Touchstone Television Productions, American Broadcasting Companies, Inc., Mark Gordon, Greg Berlanti, Marc Guggenheim, the Walt Disney Company, United Talent Agency, Mark Korman, and Endeavor, alleging copyright infringement, misappropriation, unfair competition, and unjust enrichment.[1]  Defendants have moved to dismiss pursuant to Fed.

_____

[1] Plaintiff undertook to amend her complaint on June 19, 2009, but I rejected the amended complaint she tendered because it was unsigned.  Nevertheless, despite the fact that Plaintiff has failed to make the amended complaint part of the record by an appropriate filing, because Defendants address the allegations set forth within it, I will – consistent with my obligation to view the claims in the light most favorable to the Plaintiff – treat the inchoate amended complaint as a more detailed statement

R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Because I find that Plaintiff has failed to allege facts providing a plausible demonstration of the copying of validly copyrighted material and because the state claims are preempted by federal copyright law, I GRANT Defendants' motions.

## I. FACTUAL BACKGROUND

### A.   The *Overlap Series*

Plaintiff is the author of a series of books known as *The Overlap Series*.  (Compl. ¶ 24.)  Of the four books in the series, two, *The Comfort of Strangers* and *An Ordinary Hero*, were published (*id.* ¶ 44; McNamara Decl. Ex. A & Ex. B (docket #51-1, 51-2)), and two, *The Red Tattoo* and *Days of Grace*, remain unpublished.  (Compl. ¶ 28.)  The books center on a family of time travelers, or "Reweavers."  (*Id.* ¶ 24.)  The Reweavers travel through time, or "Overlap," to change the destiny of their family members and themselves.  *An Ordinary Hero*'s main character is Tre Makepeace, who is part of a family of Reweavers.  A large portion of the book focuses on Tre's time as a soldier in the Vietnam War.  *The Comfort of Strangers* also tells the story of a

of the claims in the original complaint and as the best effort of Plaintiff to set forth causes of action.

family of Reweavers, though the primary character is a dancer and choreographer named Kendall.[2]

**B.    Fox Defendants: *Journeyman***

Plaintiff alleges that the television series *Journeyman*, which was produced by Twentieth Century Fox Film Corporation, News Corporation, NBC Universal, Inc., and Kevin Falls (collectively, the "Fox Defendants"), infringed her copyright in the books of her *Overlap Series*, personal letters stored on her computer, private telephone conversations, and details of her personal life.  (Compl. ¶¶ 82, 88-89.)

Kevin Falls created and produced the series for Twentieth Century Fox Television, and *Journeyman* aired on the NBC television network from September to December of 2007. *Journeyman* is a science-fiction television series that revolves around Dan Vasser, a San Francisco reporter who involuntarily travels through time.  In each episode, Dan finds himself unwillingly shifted to some time in the past, where he must change the destiny of a stranger.  All of his time traveling is in the San Francisco area, so he sporadically comes across past versions of family members and friends.  Over the course of the

_____

[2] The parties have not submitted copies of Plaintiff's third and fourth books, *The Red Tattoo* and *Days of Grace*.  This gap in the record, however, does not bear on the motion to dismiss, since, as I discuss *infra*, Plaintiff has failed sufficiently to allege either access or probative similarity of protected elements.

series, Dan learns that other time travelers like him exist, including an ex-girlfriend who he believed had died in a plane crash.

Dan's home life frames the episodic time travel.  The traveling strains his relationships, though his wife, Katie, and son, Zack, eventually learn of his time traveling and help to hide his absences.  His brother, Jack, grows suspicious of Dan's behavior and believes his gambling addiction is the cause.

Plaintiff claims that *Journeyman* contains many similarities to *An Ordinary Hero*, *The Comfort of Strangers*, *The Red Tattoo*, *Days of Grace*, two letters found only on her computer, and personal telephone conversions including:  "the objective of the series storyline – to fix lives in trouble," (Compl. ¶¶ 87-88); that the series take place in cities with above-ground transit, (*id.*); the characters' names, (*id.*); the characters' lives, (*id.*); the characters' actions, (*id.*); the technology the main character uses as part of his profession, (*id.*); the manner of time traveling, (*id.*); the "tragedy components of the romantic element as it related to time-travel," (*id.*); the "warning signs" of impending time travel, (*id.*); the type of person chosen to be a time traveler, (*id.*); the "real-life" and "non-life" events in the plot, (*id.*); the characters' acceptance of time travel, (*id.*); "the specific evidence that time travel is real and readily happening," (*id.* ¶ 87); the "unusual facts of Plaintiff's

personal life," (*id.*); that of the five main characters, "three (3) are employed in three (3) separate areas of the same profession; one (1) is in law enforcement; one (1) is involved in government," (*id.*); involuntary "serial time-travel," (*id.* ¶ 33); "'seat-of-the-pants' reactions in the time-travel moment to complete a mission/assignment," (*id.*); "travel after-effect" which indicates that the time traveling is complete, (*id.* ¶ 34); that both main characters, Dan and Tre, are tall with blue eyes and blond hair and have a wife and young son, (*id.* ¶ 36); that the actor chosen to portray Dan Vasser in the television series looks like the cover image of *An Ordinary Hero*, (*id.* ¶ 38); "the far reaching consequences to the traveler for having traveled in the first place – all of them significant; not all of them positive," (*id.* ¶ 41); "a collection of friends, family, and strangers in the travelers' lives who experience specific love, specific trouble, specific need, specific pain, suffer specific great romance, specific tragic love and specific tragic loss," (*id.* ¶ 43); and the "style, pace, and characters" including "names, lives, and smart-Alec banter." (*Id.* ¶ 45.)

### C.   Touchstone Defendants: *Grey's Anatomy*, *Private Practice*, *Eli Stone*, *All My Children*, and *Cupid*

Plaintiff also asserts copyright infringement claims against Shonda Rimes, Touchstone Television Productions, American Broadcasting Companies, Inc., Mark Gordon, Greg Berlanti, Marc

Guggenheim, and the Walt Disney Company (collectively, the "Touchstone Defendants"). She alleges that scenes, storylines, and characters from her published and unpublished works and her personal life appear in *Grey's Anatomy*, *Private Practice*, *Eli Stone*, *All My Children*, and *Cupid*.

*Grey's Anatomy* and *Private Practice* are medical dramas that air on the ABC television network. Shonda Rimes is the creator, head writer, and executive producer of both series, and Mark Gordon is an executive producer. ABC Studios (formerly, Touchstone Television), which is owned by the Walt Disney Company, produces the series. *Grey's Anatomy* centers on the lives of medical interns, residents, and doctors at the fictional Seattle Grace Hospital in Seattle, Washington. *Private Practice*, a spin-off series of *Grey's Anatomy*, follows doctors in private practice together in Los Angeles. Both series feature melodramatic medical issues and on-again, off-again romantic relationships among co-workers.

Plaintiff asserts that *Grey's Anatomy* and *Private Practice* are "identical in storyline and detail" to the *Overlap Series*, her life, and the lives of her family. (Amended Compl. ¶ 34(z).) The alleged similarities among the *Overlap Series* books and the two shows include: "people stories," (*id.* ¶ 35(z)); "medical dramas," (*id.* ¶ 35(z)); the "nucleus" of the storylines, (*id.* ¶ 52(z)); the "harbor city" setting, (*id.*); the names, lives, and

actions of the characters, (*id.*); the "technology and injuries to which the characters are subjected," (*id.*); five main characters who live in the same city and work in the same profession, (*id.*); and "tragic components." (*Id.*) Plaintiff also asserts that *Grey's Anatomy* and *Private Practice* copied themes from both her work and life such as "hot and cold running doctors." (Amended Compl. ¶ 34(z).)  In addition, Plaintiff alleges that her telephone conversations and entire scenes from her unpublished work appear in the two shows.  (*Id.* ¶¶ 37(z)-38(z), 50(z).)

Plaintiff makes similar allegations against *Eli Stone*, which she claims is "identical in storyline, action, references, character development, and plotline" to her life and work.  (*Id.* ¶ 62(z)).  *Eli Stone* is a comedy-drama that aired on ABC.  Greg Berlanti and Marc Guggenheim were the series' creators, writers, and executive producers.  The show centered on a lawyer, Eli Stone, who has an inoperable brain tumor that caused hallucinations, which he took to be prophecies.  The only similarity between her work and *Eli Stone* that plaintiff points to is the "time-travel episode" of *Eli Stone*, which she alleges "embod[ies] scenes and characters, storyline, [and] base plotline [sic]" from her work.  (Compl. ¶ 108.)

In addition, Plaintiff brings infringement claims against *All My Children*, the long running ABC soap opera, and *Cupid*, also on ABC.  She alleges that *All My Children* copied a character's

name, Kendall Hart, from two characters in *The Comfort of Strangers*, Lacey Hart and Kendall Spaulding.  (Amended Compl. ¶ 72(z)-73(z).)  As for *Cupid*, Plaintiff asserts that the show unlawfully based a character on her.  The character, Deborah, is allegedly identical to Plaintiff in that she "does bad karaoke," "works with her hands," calls her hands "magic hands," and "can slip in and out of her native linguistic dialect."  (*Id.* ¶ 75(z)-76(z).)

### D.   Mark Korman, Endeavor,[3] and United Talent Agency

Mark Korman is a Hollywood talent agent who represents Kevin

---

[3] After Korman and Endeavor failed to respond to Plaintiff's complaint, I granted Plaintiff's motion for entry of default. Thereafter they filed a motion to set aside the entry of default. Fed. R. Civ. P. 55(c) permits the court to set aside the entry of default for good cause.  "Good cause" is a variable and liberal standard, and an entry of default should be set aside "on a showing of reasonable justification." *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989).  Given my own and the First Circuit's preference for resolving cases on their merits, I "resolve doubts in favor of a party seeking relief from the entry of a default." *Id.*  In determining whether a reasonable justification exists, courts look to factors such as whether the default was willful, the timing of the motion, whether the party has a meritorious defense, and whether plaintiff would be prejudiced. *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003).  Here, the delay was not willful.  Korman and Endeavor's counsel assert Endeavor was in the midst of a merger when the papers were served and that they did not learn of the lawsuit until September.  (Korman Aff. ¶¶ 34-37; McGuire Aff. ¶¶ 24-31.) They filed their motion shortly after they learned of the motion for entry of default, and on the same day the notice of default was entered.  In addition, given the early stage of the proceedings, Plaintiff will not be prejudiced.  Finally, as discussed *infra*, defendants have a meritorious defense – Plaintiff's failure to state a claim.  *See Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, 4-5 (1st Cir. 2010).  Korman and Endeavor's Motion to Set Aside Entry of Default will therefore be GRANTED.

Falls, *Journeyman*'s creator.  At the time of the events alleged in the complaint, Korman worked for United Talent Agency ("UTA"), a California-based talent agency.  In 2008, after *Journeyman* had been cancelled, Korman moved to Endeavor Entertainment, another talent agency. (Korman Decl. ¶ 17.)

Plaintiff's only theory of liability against Korman is that he is Falls's agent.  (Compl. ¶ 57.)  The sole allegation against UTA is that the agency may have received commissions from Korman's representation of Falls.  (*Id.* ¶ 56.)  Similarly, Plaintiff's allegations against Endeavor are limited to the fact that Korman worked there and that Endeavor represented Greg Berlanti and Marc Guggenheim.  (*Id.* ¶ 109.)

## II. STANDARD OF REVIEW

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court draws all reasonable inferences in Plaintiff's favor and accepts all well-pleaded facts in the complaint as true.  *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009).  This direction applies even more forcefully in pro se proceedings, for "pro se pleadings are to be liberally construed, in favor of the pro se party."  *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990).  Still, a court should not credit "bald assertions . . . or problematic suppositions."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted).  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim

to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A court may consider documents "central to the plaintiffs' claim" or "sufficiently referred to in the complaint" without converting the motion to dismiss into one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Accordingly, in considering Defendants' motions to dismiss, I review the parties' works referred to in the complaint to the extent necessary. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

## III. DISCUSSION

### A.   Copyright Infringement

In order to state a claim for copyright infringement, Plaintiff must allege plausible facts demonstrating "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Situation Mgmt. Sys. v. ASP Consulting Group*, 560 F.3d 53, 58 (1st Cir. 2009). To prove the first element, ownership of a valid copyright, the plaintiff must show that the work is

10

original and that she complied with the relevant statutory formalities.  *Lotus Dev. Corp. v. Borland Int'l*, 49 F.3d 807, 813 (1st Cir. 1995).  A certificate of copyright registration is prima facie evidence of ownership of a valid copyright.  *Id.*

The second element, actionable copying, requires two separate alternative inquiries.  The first addresses the factual question as to whether the alleged infringer actually copied the protected material.  *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005).  Plaintiff may prove actual copying through either direct evidence – which the First Circuit has noted is uncommon, *id.* – or through "evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work," i.e. probative similarity.  *Id.*

The second inquiry addresses whether the copying is legally actionable.  Infringement occurs when "the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" *Segrets, Inc. v. Gillman Knitwear Co., Inc.*, 207 F.3d 56, 60 (1st Cir. 2000).  The test for substantial similarity asks whether "the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protected expression by taking material of substance and value." *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 33 (1st Cir. 2001).

The crux of both the probative similarity and substantial similarity examinations is originality.  *Johnson*, 409 F.3d at 18-19.  A party will only be liable for copying of original elements; similarity among unoriginal, uncopyrightable elements cannot form the basis of an infringement claim.  *Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.").

### 1.   Ownership of Valid Copyright

As an initial matter, Plaintiff's unregistered works cannot form the basis of her infringement claim.  Section 411(a) of the Copyright Act provides that a party cannot institute a copyright infringement claim until the work has been registered with the U.S. Copyright Office.  17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").  *See, e.g.*, *Steele v. Turner Broadcasting System, Inc.*, 607 F. Supp. 2d 258 (D. Mass. 2009); *Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 528 (D. Mass. 1995).  Thus, to the extent any of Plaintiff's claims are based on her unregistered works, including *Days of Grace*, the unpublished screenplay of *An Ordinary Hero*, personal letters stored on Plaintiff's computer, her private

12

telephone conversations, and details of her personal life, those claims must be dismissed.

Furthermore, copyright protection is only available for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a); *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 100 (D. Mass. 1996). Plaintiff's private telephone conversations, which are not "fixed," therefore, are not copyrightable. Similarly, factual details from Plaintiff's life cannot be the basis for her claim. *Dunn v. Brown*, 517 F. Supp. 2d 541, 545 (D. Mass. 2007) ("[I]t is well settled that 'facts' cannot be copyrighted.").

Only two of Plaintiff's works were registered at the time she filed her complaint, *An Ordinary Hero* and *The Comfort of Strangers*.[4] (McNamara Decl. Ex. C. (Docket #51-3.)) While the effective date of registration for *The Red Tattoo* is January 9, 2009, the registration certificate had not yet issued when Plaintiff instituted this action on May 4, 2009. (Pl.'s Ex. U, Certificate of Registration, (Docket #131-2.)) It appears that no court in this circuit has addressed the narrow issue of whether a work whose effective date of registration (but not

---

[4] In her complaint, Plaintiff only refers to *An Ordinary Hero*'s copyright registration, but it appears that *The Comfort of Strangers* is also registered. (McNamara Decl. Ex. C. (Docket 51-3); U.S. Copyright Office, Public Catalog, <http://cocatalog. loc.gov>.) *See Watterson*, 987 F.2d at 3 (holding that courts may consider official public records when ruling on motion to dismiss).

actual date of registration) pre-dates the filing of the complaint is "registered" within the meaning of Section 411(a). Because my determination of the motion to dismiss does not need to turn on the issue, I need not resolve that question.  Rather I will consider *The Red Tattoo* to have had valid registration as of the date this litigation was commenced.  Plaintiff's claims are thus  limited to those based upon alleged infringement of *An Ordinary Hero*, *The Comfort of Strangers*, and *The Red Tattoo*.

## 2.   Actionable Copying

To succeed on her claims that Defendants unlawfully copied *An Ordinary Hero*, *The Comfort of Strangers*, and *The Red Tattoo*, Plaintiff must demonstrate defendants both "copied [her] copyrighted work as a factual matter" and "that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar."  *Lotus Development Corp.*, 49 F.3d at 813.

Because Plaintiff has not offered any direct evidence of actual copying, her factual allegations must plausibly allege both access and probative similarity.  *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 67 (1st Cir. 2009).

## (a)  Access

While Plaintiff need not prove defendants' actual access to the copyrighted work, she must demonstrate that the alleged infringers had a "reasonable opportunity" to see her work.  *Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir.

14

2007); *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996)
(holding plaintiff must show defendant had "reasonable
opportunity to copy").  "Evidence that only creates a 'bare
possibility' that the defendant had access is not sufficient to
create a factual issue as to copying."  *Grubb*, 88 F.3d at 3.

Plaintiff suggests several theories of access.  First, she
alleges that defendants may have heard about her books when, in
2005, she appeared on a local late-night radio show, WBZ's Jordan
Rich Show.  (Compl. ¶ 51.)  Her website was announced during the
show.  (*Id.*)  Second, Plaintiff asserts that Defendants could
have hacked into her phone line to access her computer, where
they could have "help[ed] themselves to whatever was on her hard-
drive at the time; including but not limited to the entire
*Overlap Series*."  (*Id.* ¶¶ 52-54.)  She further alleges that
Defendants could have eavesdropped on her phone calls.  Finally,
Plaintiff claims Defendants could have gotten copies of her work
through her ex-boyfriend, who had access to her computer and had
a friend with contacts in Hollywood.  She alleges that "[i]t is
not beyond the scope of reality or reason" that the ex-boyfriend
and his friend "acquired Plaintiff FELDMAN's written work for
Defendants FALLS and KORMAN through accessing and/or allowing
access to Plaintiff FELDMAN's computer contents."  (*Id.* ¶ 64.)

Plaintiff's theories of access involving computer hacking,
eavesdropping, and her ex-boyfriend are essentially "'speculation
and conjecture.'" *Grubb*, 88 F.3d at 3 (quoting *Selle v. Gibb*, 741

15

F.2d 896, 901 (7th Cir. 1984)).  They are insufficient to show
that defendants had a reasonable opportunity of access.

The radio show and publication of the books present a
somewhat closer question, but are still not enough to create more
than a "bare possibility" of access.  *Grubb*, 88 F.3d at 3.
Widespread dissemination, for example by "extensive publication,"
may be sufficient to demonstrate a reasonable likelihood of
access.  4-13 Nimmer of Copyright § 13.02.  *See also ABKCO Music,
Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983);
*Playboy Enters. v. Starware Publishing Corp.*, 900 F. Supp. 433,
437 (S.D. Fla. 1995).  But evidence of "small circulation . . .
or local air time" without other proof of access is generally not
enough to demonstrate a reasonable possibility of access.  4-13
Nimmer of Copyright § 13.02.  *See, e.g.*, *Art Attacks Ink, LLC v.
MGA Entertainment Inc.*, 581 F.3d 1138, 1144-45 (9th Cir. 2009)
(holding that where company only sold about 2,000 shirts a year,
there was no widespread dissemination and no possibility of
access); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th
Cir. 2003) (holding that video that sold 19,000 copies over
thirteen years was not widely disseminated); *Peel & Co., Inc. v.
The Rug Market*, 238 F.3d 391, 396 (5th Cir. 2001) (where
"copyrighted work distributed to only a few individuals, then
allegedly infringed by third parties. . . no access was found.").

Plaintiff bears the burden of demonstrating access, *Mag
Jewelry Co.*, 496 F.3d at 117, but she has offered no evidence of

widespread dissemination of her books or of the local radio show, and no other evidence to support her claims of access. Plaintiff has failed to allege facts sufficient to demonstrate a reasonable opportunity of access to her *Overlap Series* books, and therefore cannot prove actual copying. Although this may end the infringement inquiry, for the sake of completeness, I will address the probative similarity prong.

### (b)  Probative Similarity

To demonstrate probative similarity, Plaintiff must show that "the constituent elements of the work[s] that are original" *Feist*, 499 U.S. at 361, are "so similar that the court may infer that there was factual copying." *Lotus Development Corp.*, 49 F.3d at 813. Whether Plaintiff's work contains protected elements is a matter of law. *Yankee Candle*, 259 F.3d at 34 n.5. "Thus, in examining whether actual copying has occurred, a court must engage in dissection of the copyrighted work by separating its original, protected expressive elements from those aspects that are not copyrightable because they represent unprotected ideas or unoriginal expressions." *Johnson*, 409 F.3d at 19.

Of the various elements of the *Overlap Series* Plaintiff claims *Journeyman*, *Grey's Anatomy*, *Private Practice*, *Eli Stone*, *All My Children,* and *Cupid* copied, none are copyrightable. Some of Plaintiff's allegations are simply too vague to be the basis for an infringement claim, for example, allegations that simply refer to "storylines," the "names," "lives," and "actions" of the

17

characters, and "people stories."  Of the rest, most are basic
concepts and ideas ("people stories" and "medical dramas"), and
the others are stock scenes and characters.  Copyright "does not
safeguard either the ideas themselves or banal expressions of
them." *Johnson*, 409 F.3d at 19.

For example, time travel is a general idea that is not
subject to copyright protection.  Indeed, involuntary time travel
is a common trope in many television shows, including ABC's *Lost*
and *Life on Mars* and NBC's *Quantum Leap* and movies such as *The
Time Traveler's Wife*.  Many of the alleged infringing elements
are uncopyrightable scènes à faire, or stock scenes, inherent in
the portrayal of time travel: "warning signs" of impending time
travel; some "after effect" showing the time traveling is
complete; a tragic romance related to the time traveling;
significant consequences as a result of the time travel.  "The
doctrine of scènes à faire denies copyright  protection to
elements of a work that are for all practical purposes
indispensable, or at least customary, in the treatment of a given
subject matter."  *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d
62, 68 (1st Cir. 2009).  *See also Dunn v. Brown*, 517 F. Supp. 2d
541, 545 (D. Mass. 2007) ("[T]he doctrine of 'scènes à faire'
denies copyright protection to unoriginal elements of recurring
stock scenes."); 4 Melville B. Nimmer & David Nimmer, Nimmer on
Copyright § 13.03 (2003) ("For example, the choice of writing

about vampires leads to treating killings, macabre settings, and choices between good and evil.").

Similarly, copyright protection does not extend to stock characters, such as a blond, blue-eyed hero or doctors in "hot and cold" romances.  "A person may not obtain a copyright on a particular type of character, particularly if this character represents a recognizable stereotype." *Franklin v. Ciroli*, 865 F. Supp. 947, 949 (D. Mass. 1994); *see also Quaglia v. Bravo Networks*, No. 04-10460-RWZ, 2006 WL 721545, at *3  (D. Mass. March 21, 2006) (generic character types such as "bright," "ditzy," "girl-next-door" are not copyrightable.).  Likewise, Plaintiff cannot claim a copyright in the common names "Kendall" or "Hart." 37 C.F.R. § 202.1 (excluding from copyright protection "[w]ords and short phrases such as names"); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996) ("[C]opyright law denies protection to fragmentary words and phrases) (internal quotations omitted).

Other "similarities" between Plaintiff's work and *Journeyman* are generic features found in innumerable works:  "a collection of friends, family, and strangers . . . who experience specific love, specific trouble, specific need, specific pain, suffer specific great romance, specific tragic love and specific tragic loss;" "smart-Alec banter;" characters in law enforcement and government work; a main character who is married with a son; a

recurrent theme of helping others; a city locale with above-
ground transit.   "[C]opyright will not protect, plots, subplots
or themes." *Franklin v. Ciroli*, 865 F. Supp. 947, 950 (D. Mass.
1994).

### (c)   Conclusion

Without allegations to support access to her copyrighted
work or probative similarity, Plaintiff cannot prove actual
copying as a matter of law.   Accordingly, her copyright
infringement claims must be dismissed.

### B.   State Law Claims

The Copyright Act preempts state common law claims that are
equivalent to a federal copyright infringement claim.   Section
301(a) provides that "all legal or equitable rights that are
equivalent to any of the exclusive rights within the general
scope of copyright . . . are governed exclusively by this title."
17 U.S.C. § 301(a).   *See also Cambridge Literary Properties, Ltd.
v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 86
(1st Cir. 2007) ("[T]he [Copyright] Act also contains a provision
that expressly preempts state common-law copyright protection and
all other 'legal or equitable rights that are equivalent to any
of the exclusive rights within the general scope of copyright. .
. .'") (quoting 17 U.S.C. § 301(a)); *John G. Danielson, Inc. v.
Winchester-Conant Properties, Inc.*, 322 F.3d 26, 44 (1st Cir.
2003) ("Federal copyright law preempts rights under state law

when they are the equivalent of those granted under the Copyright Act.").

A state law claim is preempted if "it does not require an element beyond 'mere copying, preparation of derivative works, performance, distribution or display.'" *Santa-Rosa v. Combo Records*, 471 F.3d 224, 226 (1st Cir. 2006) (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)); *see also Steele v. Turner Broadcasting System, Inc.*, 607 F. Supp. 2d 258, 263 (D. Mass. 2009) (State law claim preempted if "(1) the work involved falls within the 'subject matter of copyright' and (2) the state law claim incorporates no 'extra element' that is qualitatively different from the copyright claim.); *Tingley Systems, Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 104-05 (D. Mass. 2001) (holding that state law claim is preempted unless it requires an extra element).  The additional element "must be qualitatively different from the rights protected by copyright law." *Tingley Systems*, 152 F. Supp. 2d at 105.

Here, Plaintiff's misappropriation, unfair competition, and unjust enrichment claims are based on the same conduct as her copyright claim.  (Compl. ¶¶ 127-43.)  Elements of intent or commercial malfeasance are not sufficient to save a state claim from preemption.  *Tingley Systems*, 152 F. Supp. 2d at 105. Courts in this circuit have repeatedly held misappropriation,

unfair competition, and unjust enrichment claims, when based on the same allegations as the copyright claim, to be preempted. *See John G. Danielson, Inc.*, 322 F.3d at 44 (finding state law unfair competition claim based on the same actions as the federal copyright claim to be preempted); *Tingley Systems*, 152 F. Supp. 2d at 105 (holding state unfair competition and unjust enrichment claims preempted); *Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ., Inc.*, 914 F. Supp. 665, 681 (D. Mass. 1995) (holding unfair trade practice claim to be preempted because it was based on same conduct as copyright claim); *Patricia Kennedy & Co., Inc. v. Zam-Cul Enterprises, Inc.*, 830 F. Supp. 53, 56 (D. Mass. 1993) ("[C]ourts have determined that state law causes of action premised on theories such as misappropriation or unfair competition wherein the allegations are concerned solely with the copying or replication of protected works of authorship are preempted."). Plaintiff's state law claims are preempted, and are therefore dismissed.

## IV. CONCLUSION

For the foregoing reasons, I GRANT Defendants' motions to dismiss for failure to state a claim. (Docket #42, 56, 96, 122.) Consequently, I need not address Defendants' motions to dismiss for lack of personal jurisdiction, and these motions are MOOT. (Docket #44, 94, 121.)

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE